UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Robert Swinney et al.,

       Plaintiffs,

v.

Amcomm Telecommunications, Inc.,

       Defendant.

_____/

Case No. 12-12925

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING PLAINTIFF LESLIE WARDELL'S MOTION FOR VOLUNTARY DISMISSAL AND DENYING PLAINTIFF SWINNEY'S MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE [17, 10]**

Plaintiffs Robert Swinney and Leslie Wardell filed a Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, claim against their employer Defendant Amcomm Telecommunications, Inc., alleging that Defendant misclassified them as "independent contractors," when they were performing the same work as employees, and therefore entitled to overtime and other benefits.[1]  (Dkt. 1, Compl.)

Two motions are currently before the Court.  Plaintiffs filed a motion for conditional class certification and Plaintiff Wardell has filed a motion to voluntarily dismiss himself from this case and no longer act as class representative.  (Dkt. 10, 18.)  The Court first

_____

[1]Defendant is a telecommunications company involved in telephone and cable and internet installation.  Defendant states that its employees perform 80% of the work involved with the company's business.  It further states that it utilizes independent contractors for overflow work and that these independent contractors "sign independent contractor agreements [that] specifically set forth the nature of the relationship as that of an independent contractor as opposed to an employee."  (Def.'s Resp. at 1.)

addresses the motion for voluntary dismissal, as it affects the Court's analysis on the motion for conditional certification.

For the reasons below, the Court grants Plaintiff Wardell's motion for voluntary dismissal and denies Plaintiff Swinney's motion for conditional certification.

## I.   Plaintiff Wardell's motion for voluntary dismissal

Plaintiff Wardell moves for voluntary dismissal of his claims against Defendant and seeks to withdraw as class representative.  On October 7, 2012, he delivered the following signed statement to Defendant.

> To whom it may concern,
>
> I (Leslie A. Wardell) notified Ms. Claret Vargas of Lichen & Liss–Riordan that I no longer wanted or was going to be a part of this lawsuit filed on July 3rd, 2012.  Just to make it perfectly clear.  I (Leslie A Wardell) will no longer be a part of this lawsuit.

(Def.'s Resp. to Pls.' Mot. for Voluntary Dismissa, Ex. A, Wardell Note.)

The parties disagree whether the dismissal should be with or without prejudice.  In response to Plaintiff Wardell's motion to dismiss, Defendant also requests an award of attorneys' fees and costs and that the Court issue Rule 23(e) notice to all potential opt-in plaintiffs that Plaintiff Wardell will no longer be in this case.

### A. Rule 41 voluntary dismissal standard

Federal Rule of Civil Procedure 41 sets forth the procedure for voluntary dismissal. Rule 41(a)(2) allows a plaintiff to seek voluntary dismissal after an answer is filed and if the plaintiff was unable to obtain a stipulation to dismiss from the defendant under Rule 41(a)(1)(A)(ii).

2

"The decision to grant of deny a motion under Rule 41(a)(2) rests in the sound discretion of the trial court." *Tapco Int'l Corp. v. Dinesol Bldg. Prod., Ltd.*, 05-70934, 2007 WL 2710115, at *2 (E.D.Mich. Sept. 13, 2007) (Edmunds, J.) (citation omitted).   In exercising its discretion, a court asks three questions: "(1) whether the dismissal is appropriate; (2) if yes, whether the dismissal should be with or without prejudice; and (3) whether any terms or conditions should accompany the dismissal." *Id.* (citations omitted).

### 1. Dismissal without prejudice and without conditions is appropriate

Generally, a court grants a motion to voluntarily dismiss a plaintiff unless a defendant "will suffer 'plain legal prejudice' as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." *Tapco*, 2007 WL 2710115, at *2 (citations and internal quotation marks omitted).   Factors to consider are: "(1) the defendant's effort and expense of trial preparation, (2) the plaintiff's delay or lack of diligence in prosecuting claims, (3) the [] explanation why dismissal without prejudice is appropriate, and (4) whether the defendant has filed a motion for summary judgment." *Id.* (citation omitted).

Defendant requests that the Court dismiss Plaintiff Wardell from this action with prejudice. (Def.'s Resp. to Pls.' Mot. for Voluntary Dismissal at 3.)  Defendant argues that dismissal with prejudice is warranted because Plaintiff Wardell has handwritten a note expressing his intent that he has no interest in being part of this lawsuit and uses the phrase "perfectly clear" with respect to his intentions.  (*Id.* quoting Ex. A, Wardell Note.)

Here, dismissal without prejudice is appropriate.  The case is in its early proceedings, so Defendant has not expended a significant amount of expense and effort.  Plaintiff Wardell filed his motion to dismiss only a few weeks after he submitted his letter of intent to withdraw to his counsel.  And there is no motion for summary judgment pending.  At

3

best, Defendant only faces the prospect of a second lawsuit, which the Sixth Circuit and courts have held is not adequate to require dismissal with prejudice. *See Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994).

Here, the Court finds that there is no plain legal prejudice if the Court dismisses Plaintiff Wardell without prejudice. Dismissal without prejudice and without conditions is appropriate.

### B. Attorneys' fees and costs are not appropriate

Defendant requests attorneys' fees and costs for the work it expended related to Plaintiff Wardell's claim, "including that related to addressing his lengthy and detailed affidavit." (Def.'s Resp. to Pls.' Mot. for Voluntary Dismissal at 4.) Defendant states that it spent unnecessary time and expense on the case as it related to Plaintiff Wardell. (*Id.*) Defendant argues, had Plaintiff Wardell "never been part of the lawsuit, that work would never have had to have been performed." (*Id.*)

While Rule 41 gives the Court the ability to grant a voluntary dismissal on terms that the court finds "proper," the Court does not find attorneys' fees and costs proper at this time. The Court points out that Plaintiffs filed the motion for conditional certification, with Plaintiff Wardell's affidavit in support, on September 18, 2012 and Plaintiff Wardell delivered his letter indicating that he no longer wanted to be in the lawsuit on October 7, 2012, two days before Defendant filed its response to the motion for conditional certification. The Court finds, therefore, that much of the alleged work Defendant claims was wasted was not wasted at the time and at the posture of the case. Defendant had to address both Plaintiffs' declarations to properly respond. There is nothing in the record to suggest that Plaintiff Wardell or Plaintiffs improperly put forth Plaintiff Wardell's declaration

4

so that Defendant would incur fees and costs.  On these facts and given the timing of Plaintiff Wardell's request, the Court does not find an award of fees or costs "proper."

### C. Rule 23(e) notice is not proper

Rule 23(e) governs the settlement, voluntary dismissal, or compromise of class action claims.  Fed.R.Civ.P. 23(e).  The Rule requires a court to issue notice to class members when a class action claim is resolved.  Fed.R.Civ.P. 23(e)(1).  While the language of the Rule states that the "claims, issues, or defenses of a *certified class* may be settled, voluntarily dismissed, or compromised only with the court's approval," the Sixth Circuit has noted that "[m]ost courts have found that Rule 23(e)'s notice requirement applies to *putative* class members as well as to *certified* class members."  *Doe v. Lexington-Fayette Urban Cnty. Gov't*, 407 F.3d 755, 761 (6th Cir. 2005) (first emphasis added)(citations omitted) (discussing Rule 23 before the 2003 amendment).  But a court is not always required to issue notice–the requirement of issuing notice hinges on whether the potential class members would be prejudiced by a resolution of class claims without notice.  *Id.* at 762.  The Sixth Circuit quoted with approval the "general rule adopted by most federal courts that have addressed [the voluntary dismissal of a class action notice requirement"]:

> [M]ost requests for voluntary dismissals of representative suits are made before there has been any class ruling.  Whether a voluntary dismissal in these circumstances is sought in connection with a proposed settlement of claims of the individual plaintiff only or in a nonsettlement context, most courts have stressed the need under Rule 23(e) to examine *whether any prejudice to the class will result if the dismissal of the action is allowed without class notice*.

*Id.* (emphasis in *Lexington*) (citations omitted).  The Sixth Circuit adopted "the view of the majority of the circuits that Rule 23(e) applies in a precertification context where putative class members are likely to be prejudiced."  *Id.* at 764.  The Rule's purpose is "to

5

discourage the use of the class action device by the individual representative plaintiff to secure an unjust private settlement and to protect the absent class members against the prejudice of discontinuance." *Id.* at 761 (citation omitted).

Here, the Court finds that precertification notice of voluntary dismissal is not necessary. Defendant has not offered any proposed prejudice that the potential class members would suffer if the Court dismisses one of the two named plaintiffs in this case. Defendant states that it "believes that potential opt-in plaintiffs should be made aware of the fact that one of the two original plaintiffs in this action has decided not to participate." (Def.'s Resp. to Mot. for Voluntary Dismissal at 5.) The Court sees no reason why that awareness is necessary when a potential plaintiff is not prejudiced by the dismissal. The Court denies Defendant's request for Rule 23(e) notice.

## II.   Plaintiff Swinney's motion for conditional certification[2]

Plaintiff alleges that Defendant violated the FLSA because he and the other independent contractors were actually employees entitled to overtime pay. "Section 207(a) of the FLSA requires employers to pay time-and-a-half for employee labor exceeding forty hours per week." *Comer v. Walk-Mart Stores, Inc.*, 454 F.3d 544, 545 (6th Cir. 2006). The FLSA exempts certain types of employees and workers associated with an employer from

---

[2]The Court refers to Plaintiff Swinney as "Plaintiff" in the remainder of this order. The Court only considers his declaration in the motion for conditional certification. As the Court has dismissed Plaintiff Wardell, he can no longer be "similarly situated" to potential class members. *See White v. Baptist Mem'l Health Care Corp.*, ___ F.3d ___, 2012 WL 5392621, at *7 (6th Cir. 2012 Nov. 6, 2012)("Just as opt-in plaintiffs are not similarly situated to a lead plaintiff if their claims are dismissed . . . .a lead plaintiff cannot be similarly situated and represent opt-in plaintiffs without a viable claim."). The *White* court dismissed the lead plaintiff's claim and then held that, because she no longer had a viable FSLA claim, she could no longer "be similarly situated and represent opt-in plaintiffs[.]" *Id.* (citation omitted).

6

the statutory overtime payment requirement.  *Id.*, *see* 29 U.S.C. § 213. Plaintiff seeks

conditional certification of the following class:

> All persons who, at any time since September 17, 2009 (1) have worked as
> cable installation technicians for AMComm Telecommunications, Inc. within
> the state of Michigan; (2) have been classified as "independent contractors";
> and (3) have not been paid time and a half for hours worked over forty in a
> workweek.

(Pl.'s Mot. at 2.)

### A.  Conditional class certification - general principles

Plaintiff seeks conditional class certification and judicial notice of a collective action

as allowed under § 216(b) of the FLSA.  Section 216(b) provides that:

> An action . . . may be maintained against any employer . . . in any Federal or
> State court of competent jurisdiction by any one or more employees for and in
> behalf of himself or themselves and other employees *similarly situated*.  No
> employee shall be a party plaintiff to any such action unless he gives his
> consent in writing to become such a party and such consent is filed in the court
> in which such action is brought.

29 U.S.C. § 216(b) (emphasis added).  As the Sixth Circuit has observed, "[u]nlike class

actions under [Rule] 23, collective actions under FLSA require putative class members to

opt into the class," and "[t]hese opt-in employees are party plaintiffs, unlike absent class

members in a Rule 23 class action."  *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 583

(6th Cir. 2009).  Suits brought under § 216(b) of the FLSA are thus called "collective

actions;" not class actions.  *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th

Cir. 2006).

Section 216(b) "establishes two requirements for a representative action" brought by

employees "in their own behalf and for 'similarly situated' persons."  *Id.*  First, "the [named]

plaintiffs must actually be 'similarly situated,'" and second, "all plaintiffs must signal in

7

writing their affirmative consent to participate in the action." *Id.* (citing 29 U.S.C. § 216(b) and *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 167-68 (1989)).   The district court's task is to "first consider whether plaintiffs have shown that the employees to be notified" of the collective action "are, in fact, 'similarly situated.'"   *Id.*  If the plaintiffs meet this burden, then "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit."  *Id.*

Although the phrase "similarly situated" is undefined, "the Sixth Circuit has recognized that district courts typically 'follow[ ] a two-stage certification process . . . to determine whether the opt-in plaintiffs and lead plaintiffs [are] similarly situated.'"  *Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3154252, *1 (E.D. Ky. Sept. 28, 2009) (quoting *O'Brien*, 575 F.3d at 583 and citing *Comer*, 454 F.3d at 546).  The first stage of § 216(b) certification, also known as the "notice stage,"  takes place early in the litigation; i.e., "at the beginning of discovery."  *Comer*, 454 F.3d at 546.  At this notice stage "the court determines whether the suit should be 'conditionally certified' as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to participate."  *Noble*, 2009 WL 3154252 at *1.  The second stage occurs much later; "after all of the opt-in forms have been received and discovery has been concluded."  *Comer*, 454 F.3d at 546 (internal quotation marks and citation omitted).

Plaintiff's motion here involves this first or "notice" stage and seeks only conditional, not final, certification.   "The lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs."  *O'Brien*, 575 F.3d at 584.  Plaintiff's burden under the FLSA is less stringent than that required for class certification under Rule 23 of the Federal Rules of Civil Procedure.  *Id.* (observing that the district court erred when

8

it "applied a Rule 23-type analysis" and found "that the plaintiffs were not similarly situated because individualized questions predominated."). To be considered "similarly situated," it is sufficient if plaintiffs' "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of those theories are inevitably individualized and distinct." *Id.* at 585. This common theory is a sufficient but not a necessary condition for a finding that a group of employees is similarly situated. *Id.* Moreover, as the Sixth Circuit observed in *Comer*, "[t]he plaintiff must show only that his position is similar, *not identical,* to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47 (internal quotation marks and citations omitted and emphasis added). District courts generally allow the lead plaintiffs to "show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp.2d 545, 548 (E.D. Mich. 2004) (internal quotation marks and citations omitted). *See also Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009) (same). The Court applies that standard here.

This "first stage" or notice standard is "fairly lenient," requiring only that Plaintiff "submit evidence establishing at least a colorable basis for [his] claim that a class of 'similarly situated' plaintiffs exists." *Olivo*, 374 F. Supp.2d at 548 (internal quotation marks and citation omitted). "[T]he Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Brasfield*, 257 F.R.D. at 642. *See also White v. Baptist Mem'l Health Care Corp.*, ___ F.3d ___, 2012 WL 5392621, at *6 (6th Cir. 2012 Nov. 6, 2012).

9

**B. Plaintiff's factual showing[3]**

Plaintiff has submitted an affidavit in support of his motion for condition certification.[4] (Pl.'s Mot., Ex. C, Pl.'s Aff.)

Plaintiff worked at Defendant from approximately October, 2010 until March, 2012, out of Defendant's White Lake, Michigan office.  (Pl.'s Aff. ¶¶ 1, 2.)  Plaintiff stated that he worked as an "independent contractor."  (*Id.*)  As an independent contract, Plaintiff stated that "[a]ll the work [he] performed was related to the installation and repair of high-speed internet, cable television, and telephone services for customers of Bright House Networks." (*Id.* ¶ 3.)

Plaintiff stated that Defendant trained its independent contractors.  (Pl.'s Aff. ¶ 4.) Plaintiff explained that Defendant required him to train with installation technicians for two

---

[3]Much of Defendant's response to Plaintiff's motion for conditional certification attacks Plaintiff's factual allegations–arguing the differences between Plaintiff Swinney and Plaintiff Wardell's affidavits, setting forth what it believes are misstatements, and trying to further explain the role of independent contractors at Amcomm.  Defendant submitted the affidavit of its president, Matthew Schultz.  (Def.'s Resp. at 1, Ex. B, Schultz Aff.)  Despite putting forth this evidence, the Court's duty at this conditional certification stage, as stated above, is not to resolve factual disputes or make credibility determinations.  The Court therefore considers only Plaintiff's affidavit to determine whether he makes the requisite factual showing.

[4]Defendant points out that Plaintiff's affidavit is not properly notarized and argues that the Court should disregard it.  (Def.'s Resp. to Pl.'s Mot. for Conditional Certification at 2.) Defendant has not supported that position with any authority, and the Court finds that position is contrary to law.  28 U.S.C. § 1746 allows for "unsworn declarations under penalty of perjury" to support any matter that legally requires an affidavit to support it.  The declaration must be in "substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".  28 U.S.C. § 1746(2).  *See also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) (stating, "[c]ourts are generally consistent in validating documents that were sworn to under penalty of perjury, notwithstanding the fact that they were not notarized.") (citation omitted).  Here, Plaintiff has sworn to the affidavit under penalty of perjury and dated it.  The Court therefore finds it can appropriately consider the 'affidavit.'

10

weeks to learn how Defendant "wanted [] each job order carried out, and [] [was] trained by [Defendant] on how to perform such installations and repairs." (*Id.*)  Plaintiff added that Defendant never paid him for the time he spent training. (*Id.*)

Plaintiff stated that, for most of the time he worked at Defendant, he would arrive at the White Lake warehouse by 7 a.m. (Pl.'s Aff. ¶ 5.)  Plaintiff stated that "[a]pproximately 50 other technicians who were allegedly 'independent contractors' would report to [White Lake] on a daily basis around 7:15." (*Id.*)  Plaintiff added that there were other technicians who installed for Charter, who had to arrive much earlier, around 6 a.m. (*Id.*)  Plaintiff stated that he did not know how many of these Charter technicians there were. (*Id.*)

While working at Defendant, Plaintiff stated that Defendant would give work out to carry out cable installation services for the various cable company customers. (Pl.'s Aff. ¶ 6.)  Plaintiff stated that Defendant's supervisors assigned the work orders. (*Id.*)  And Plaintiff added that the independent contractors were required to have signage of Defendant and the cable company for which they were performing work on their vehicles, and that they were required to wear Defendant shirts and badges. (*Id.*)

Plaintiff alleged that the independent contractors had no "discretion other than to follow the work order given to [them] by [Defendant] and to perform the work assigned at the times assigned." (Pl.'s Aff. ¶ 7.)  Plaintiff stated that his job assignment times ranged from 8 a.m. to 10 p.m. (*Id.* ¶ 8.)  He maintained that he was required to stay until the job was completed. (*Id.*)

Plaintiff stated that Defendant knew where he was at all times, because Defendant tracked all of its trucks by GPS. (Pl.'s Aff. ¶ 9.)  Plaintiff stated that, "if [he] was called to do a last-minute job, [he] felt that [he] could not decline to take the job." (*Id.*)  Plaintiff

11

added that Defendant knew where its trucks had been and that it checked to see if the cable installation technicians "arrived to assigned jobs on time." (*Id.*)

Plaintiff explained that "Quality Control" inspected the jobs he performed. (Pl.'s Aff. ¶ 10.) Plaintiff further explained that, if Quality Control "did not like the quality of the job," Defendant would deduct a "charge back" from his pay. (*Id.*) Plaintiff stated that the Quality Control person was a Bright House employee, but Defendant deducted the charge back from his paycheck. (*Id.*) Plaintiff added that the "charge back" for any quality issue was $100, regardless of whether the job completed was worth less. (*Id.*) Plaintiff stated that he did not have the right to contest the reasons for his charge backs and that he was only told that he had to sign the charge back paperwork, which then resulted in the deduction. (*Id.*)

Plaintiff stated that Defendant paid the independent contractors on a per job basis and gave a set amount for each job. (Pl.'s Aff. ¶ 12.) Plaintiff added that the independent contractors did not have the ability to negotiate the amount of their payments. (*Id.*)

Plaintiff stated that he and "virtually all of the cable installation technicians who worked for [Defendant], worked more than 40 hours each week." (Pl.'s Aff. ¶ 13.) Plaintiff also stated that he and the other technicians would have to work five days a week, "between 60 and 80 hours a week and on no occasions were [they] ever paid overtime." (*Id.*) If a technician left early, Plaintiff stated, he would be penalized by "being give low-value work, and/or [he] would be backcharged." (*Id.* ¶ 14.)

Plaintiff alleged that, during the time he and other contractors performed work for Defendant "there was virtually no opportunity to work for any other cable installing company or to perform any other telecommunications work ." (Pl.'s Aff. ¶ 15.) Plaintiff gave two

reasons for not having the opportunity to work anywhere else.  (*Id.*)  He first stated that they "were required to work all the time for [Defendant,] there was no time to [work for anyone else.]" (*Id.*)  The second reason, Plaintiff stated, was because he and the other contractors "were informed that [they] could not work for both a competitor of [Defendant] and [Defendant.]" (*Id.*)

Plaintiff maintained that, while working for Defendant, "all of the equipment which [he and the other contractors] installed or repaired was provided [by Defendant.]" (Pl.'s Aff. ¶ 16.)  Plaintiff added that, if he and the other contractors needed tools, they could get them from Defendant's warehouse and then Defendant would take the costs of the tools out of their paychecks.  (*Id.*)  Plaintiff also added that they had to rent and return some of the specialized tools on a daily basis.  (*Id.*)

Plaintiff then stated that, if Defendant "did not believe a technician was doing a good job, [it] would simply terminate the technician without notice. [Defendant] could also terminate technicians for no reason at all."  (Pl.'s Aff. ¶ 17.)

**C. Plaintiff fails to meet the fairly lenient standard for conditional certification**

The Court finds that Plaintiff's declaration fails to meet the fairly lenient factual standard. He has only offered conclusory allegations in support of his allegation that others similarly situated exists.  Those allegations are insufficient for the Court to conditionally certify a class.

*Arrington v. Michigan Bell Tel. Co.*, 10-10975, 2011 WL 3319691 (E.D.Mich. Aug. 1, 2011) (Lawson, J.) is an example of when a plaintiff's allegations fall short of the requirements for conditional certification.

There, the plaintiffs alleged that they were misclassified as managers when they should have been hourly workers entitled to overtime. *Arrington*, 2011 WL 3319691, at *1. The plaintiffs submitted two declarations in support of their allegations and pointed the court to other cases in the district that had conditionally certified classes in similar cases. *Id.* at *4. The court distinguished the plaintiffs' two illustrative cases, issued by this Court. *Id.* at *5 (citing *Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213 (E.D.Mich. 2010) and *Fisher v. Michigan Bell Tel. Co.*, 665 F.Supp.2d 819 (E.D.Mich. 2009)). The court stated that those cases involved "significantly more individual employees" as lead plaintiffs and as potential opt-ins. *Id.* The court noted the other cases' eleven and five named plaintiffs and their 60 and 104 opt-ins. *Id.* The court stated that, while "numbers are not dispositive, they are indicative of the likelihood that other employees classified as the plaintiffs believe that they might be similarly-situated." *Id.* The court acknowledged that the plaintiffs anticipated a class of at least 150 members, but the court commented that that "belief . . . [was] supported by nothing more than the statement itself." *Id.*

There, the plaintiffs also argued that they were similarly situated to the other potential class members because they were "all subject to the defendant's FLSA-violating policy of improperly classifying the [low-level managers] as exempt from overtime wages under the FLSA." *Arrington*, 2011 WL 3319691, at *5. The court found, though, that the plaintiffs supported their allegations "with declarations and depositions of the plaintiffs in which the plaintiffs assert only their 'beliefs' that other [low-level managers] also [were] subject to that practice, along with documents filed or developed in the other unrelated cases." *Id.*

The court held that the plaintiffs "failed to meet the modest requirement that they show that other [low-level managers] would be similarly-situated because they provide

14

nothing more than conclusory allegations." *Arrington*, 2011 WL 3319691, at *6.  The court explained that, while the plaintiffs claimed a common violation by the defendant, they failed to provide "evidence of common treatment beyond the two experiences of [the named plaintiffs] and their beliefs that other [low-level managers] [were] not being compensated for overtime work." *Id*.  Despite the named plaintiffs' beliefs in their declarations, the court discussed, the plaintiffs "pointed to no evidence at all that could support their argument that other [low-level managers] [were] similarly situated.  *Id*.

The *Arrington* court denied the plaintiffs' motion for conditional certification, but did permit the plaintiffs "to provide [the] plaintiffs a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and the notice to opt in."  2011 WL 3319691, at *6 quoting 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 (3d ed.2005) at 495–96.  The court found the second chance at conditional certification warranted "in light of similar actions involving parallel job classifications in other courts around the country."  *Id*.  Those similar actions were all also against the *Arrington* defendant, Michigan Bell Telephone Company.

Just as in *Arrington*, Plaintiff has alleged that Defendant violated the FLSA by failing to pay him overtime. He also alleged a class size of at least fifty.  And he finally has alleged that Defendant subjected all of the independent contractors to the same.  But, also just as in *Arrington*, Plaintiff has only provided conclusory allegations in support of his affidavit. The Court also points out that Plaintiff has offered only his declaration in support of conditional certification.  While, as the court noted in *Arrington*, numbers are not dispositive, they are a factor.  But his declaration, as it stands, with no other evidence, is insufficient. *See Shipes v. Amurcon Corp.*, 10-14943, 2012 WL 995362, at * 6 (E.D.Mich. Mar. 23,

15

2012) (Roberts, J.)  (Stating that the lone named plaintiff representative alleged and provided concrete evidence that the defendant made adjustments to the hours non-exempt employees worked.  And noting that the plaintiff also put forth defendant emails that certain employees' hours were reversed.)  (But holding that the other named plaintiff for a different class provided "nothing more than mere allegations that she and others like her were improperly classified as FLSA-exempt.  The court held that the mere allegations without factual support, such as written policies and emails that supported the other class, were not enough to meet this plaintiff's burden.).

Plaintiff argues that *Perez v. Comcast*, 10-1127, 2011 WL 5979769 (N.D.Ill Nov. 29, 2011) is analogous to this case and should help persuade the Court to conditionally certify their collective action FSLA claim.  In *Perez*, the plaintiffs argued, as here, that Comcast misclassified them as independent contractors and therefore denied "legal protections including the right to minimum and overtimes wages."  2011 WL 5979769 at *1.  The proposed class would consist of "all Comcast cable technicians who provided installation, audit, disconnection or repair services for Comcast customers pursuant to its contract . . . and who were classified as independent contractors."  *Id.*  In support of the conditional certification request, the plaintiffs "submitted declarations in which each state[d] that they worked as Comcast cable technicians, they regularly worked 80 or more hours per week with no overtime pay, they had to pay for their own trucks, including gas and repairs, they had to pay for their own Nextel phone including service, they frequently worked 12-hour days, and performed cable disconnection or installation services."  *Id.*  The court noted that the plaintiffs indicated that "like the other technicians, they arrived at work at approximately 7 a.m., received a list of addresses to service that day, used Technet technology installed

16

on their Nextel phones to register when a job was being started and then upon completion, and filled out paperwork for Comcast for each address serviced." *Id.*

The *Perez* court held that the plaintiffs had put forth the "modest factual showing" required for conditional certification. 2011 WL 5979769, at *1. The court further held so over the defendants' assertions that the individualization among the plaintiffs abounded. *Id.* at *2. The court stated that the "[i]nquiry into the different positions and tasks of the putative plaintiffs is premature at this stage." *Id.* (citation omitted).

But with *Perez*, the Court is unable to determine what weight to give to the factual evidence put forth in that case compared to this case. There, the court noted that multiple plaintiffs submitted declarations alleging FLSA violations. 2011 WL 5979769, at *1. While the general factual allegations in *Perez* may mirror the allegations here, the *Perez* case and allegations do not help Plaintiff. There, the court found that the multiple declarations satisfied the similarly situated standard. Here, the Court finds that Plaintiff's sole declaration, with its conclusory allegations, is not sufficient even under the lenient standard to satisfy his burden that others similarly situated exist.

## III.  Conclusion

For the above-stated reasons, the Court GRANTS Plaintiff Wardell's motion for voluntary dismissal without prejudice and DENIES Plaintiff Swinney's motion for conditional certification.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: January 2, 2013

17

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 2, 2013, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager