UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Robert Swinney, et al.,

    Plaintiffs,

Case No. 12-12925

Honorable Nancy G. Edmunds

v.

AMcomm Telecommunications, Inc.,

    Defendant.

_____/

**ORDER AND OPINION DENYING DEFENDANT'S MOTION TO STRIKE NOTICES OF CONSENT, CEASE FURTHER NOTICES OF CONSENT AND FOR SANCTIONS AND DISQUALIFICATION OF PLAINTIFFS' COUNSEL [84] AND OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE OPT-IN CONSENT FORMS OF LEPPER, SALESMAN, FORREST, AND TOTH [91]**

**I.   Introduction**

Plaintiff Robert Swinney has filed a Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, claim against his employer Defendant AMcomm Telecommunications, Inc., alleging that Defendant misclassified him as an "independent contractor," when he was performing the same work as Defendant's employees, and therefore entitled to overtime pay and other benefits.[1]  (Dkt. 1, Compl.)

On August 8, 2013, the Court granted in part and denied in part Plaintiff's second motion for conditional certification.  (Dkt. 65.)  The Court found that Plaintiff and the

---

[1] Defendant is a telecommunications company involved in telephone and cable and internet installation.  Defendant states that its employees perform 80% of the work involved with the company's business.  It further states that it utilizes independent contractors for overflow work and that these independent contractors "sign independent contractor agreements [that] specifically set forth the nature of the relationship as that of an independent contractor as opposed to an employee." (Def.'s Resp. at 1.)  Defendant has offices throughout Michigan.

additional Plaintiffs' affidavits were sufficient to meet the lenient standard for conditional certification for a class based on the individuals that worked out of Defendant's White Lake, Michigan warehouse, and that warehouse alone. (*Id.*) The Court conditionally certified the following class:

> [a]ll persons who, at any time since September 17, 2009 (1) have worked as cable installation technicians for Amcomm Telecommunications, Inc., out of the White Lake, Michigan warehouse; (2) have been classified as "independent contractors;" and (3) have not been paid time and a half for hours worked over forty in a workweek.

*Id.*

Since the Court's opinion and order granting in part and denying in part Plaintiffs' second motion for conditional certification, Plaintiff has filed a number of notices of consent in this suit. (Dkt. 68, 70, 72, 73-79, 81-83, 88, representing eighteen additional plaintiffs.)

Defendant has now filed a motion requesting that the Court strike the Consent forms. (Dkt. 84.) Defendant argues that the Consent and the envelope that the Notice and Consent form were sent in are so misleading that sanctions are appropriate. (*Id.*)

Defendant requests the following sanctions: (1) striking of the Consents filed since the Court's order on Plaintiffs' second motion for conditional certification; (2) prohibiting Plaintiffs' counsel from any further communication with any potential class members; (3) awarding costs and attorneys's fees to Defendant; and (4) disqualifying Plaintiffs' counsel from this litigation. (Def.'s Mot. to Strike at 2.)

**II. Analysis**

    **A. The Court denies Defendant's request to strike the Consent forms and request for other sanctions**

The Court denies Defendant's request to strike the Consent forms and denies Defendant's other sanctions requests. While the Court recognizes that several aspects of

the process by which Plaintiffs mailed the Notice and Consent forms is sloppy, neither the Notice nor the Consent are misleading. The Court finds that, while Plaintiffs' counsel made one error in the mailing and was not thorough in another respect, nothing that Plaintiffs' counsel did shows any bad faith.[2]

Defendant makes two main arguments as to why the Notice and Consent forms are misleading. Defendant first argues that the substance of the Consent forms is defective. Defendant then argues that the envelope in which the Notice and Consent forms were sent in were misleading. The Court rejects both arguments.

### 1. The Notice and Consent forms, read together, are not misleading

On September 12, 2013, Plaintiff started forwarding Notices of Collective Action to potential class plaintiffs. (Def.'s Mot. at 5.) Defendant objects to the language of the "Consent to Join Collective Action" form, the only form, Defendant maintains, that requires the potential opt-in plaintiffs' signatures. (*Id.*)

The Consent form's third paragraph is as follows:

> 3. Please fill out the following: I worked as a cable installation technician for Amcomm Telecommunications, Inc., performing installation, maintenance and disconnect services from _____ to _____. During that time, I worked over 40 hours per week, but was not paid by Amcomm time-and-a-half for hours worked above 40 hours in a week.

---

[2] Defendant argues that Plaintiffs' counsel has a history of disobeying Court orders. For Defendant makes much of the fact that Plaintiffs' counsel improperly filed subpoenas early in this litigation. (Def.'s Mot. at 4.) Defendant reminds the Court that it granted Defendant's motion to quash. (*Id.*) Plaintiffs' failure to file the subpoenas in accordance with the Federal Rules did not appear to be in bad faith. The magistrate judge, in fact, permitted Plaintiffs' counsel to refile those subpoenas. The Court will not attribute the earlier mistake to the pending motion.

Below the third paragraph is a signature line. (Def.'s Mot., Ex. C, Notice of Pendency of FLSA Collective Lawsuit and Consent to Join Form.)

Defendant argues, "[c]onspicuous by its absence is a provision explaining the requirement that the individuals being solicited to join this litigation worked out of AMcomm's White Lake office." (Def.'s Mot. at 6.) Defendant argues that the Consent form is "in direct violation of [the] Court's Order[.]" (*Id.*) Defendant states that it objected to the Consent form's language, but that Plaintiff did not alter the form. (*Id.*)

The Court finds no merit in Defendant's argument. The Notice that accompanies the Consent explains that the lawsuit applies solely to White Lake, Michigan warehouse employees. The "to" line applies only to those individuals who perform work out of the White Lake, Michigan warehouse:

> [i]ndividuals who worked or are working as installation and/or maintenance technicians for AMCOMM TELECOMMUNICATIONS, INC., and who were not paid as employees between September 17, 2009 and the present, and who performed this work out of the White Lake, Michigan warehouse.

(Def.'s Mot., Ex. C.)

The Notice also contains a section entitled "YOUR RIGHT TO MAKE A CLAIM IN THIS SUIT." That section provides:

> [i]f at any time between September 17, 2009 and the present you were classified as an "independent contractor" for Amcomm out of its White Lake, Michigan warehouse and performed work on behalf of Amcomm, and were not paid overtime for any hours worked beyond 40 in one week, you have a right to assert a claim under the FLSA in this lawsuit.

(Def.'s Mot., Ex. C.)

The fact that the Consent form did not initially state that the lawsuit was for White Lake individuals is of no consequence when the Notice expressly stated it several times.

The Court nevertheless reviews Plaintiffs' argument and version of events leading up to the Notice and Consent mailings.

Plaintiffs explain that, five days after the Court's August 23, 2013 order, on August 28, 2013, they emailed Defendant and requested that Defendant provide a list of the White Lake technicians's addresses so that they could send out the required notices. (Pls.' Resp., Ex. A.) Defendant's counsel responded that he was leaving on vacation and would forward the request to his client, and he would try to determine how long gathering the list would take. (*Id.*) On September 4, 2013, Plaintiffs' counsel contacted Defendant's counsel and sought the status of the updated contact list. (*Id.*) Defendant's counsel responded a day later, informing Plaintiffs' counsel that he had already provided the original list to Plaintiffs and that he had contacted his client about the new list and would provide the list "just as soon as it [wa]s available." (*Id.*)

A week later, around September 12, 2013, Plaintiffs' counsel states that it sent out the Notice and Consent letters to putative class members based on the first list that Defendant had provided them and referenced in the September 5, 2013 email. (Pls.' Resp. at 8.) That list was not tailored to the White Lake, Michigan warehouse employees but instead represented a cross-section of employees from all of Defendant's locations. Plaintiffs state that their counsel edited the Notice so that it would be consistent with the Court's order to expressly limit the class to the White Lake, Michigan warehouse individuals. (*Id.*)

On September 19, 2013, Plaintiffs' counsel again emailed Defendant's counsel asking for the updated list. (Pls.' Resp., Ex. D.) Plaintiffs' counsel stated that it would file a motion to compel and for sanctions if Plaintiffs did not receive the updated list by end of the week. (*Id.*)

5

Defendant's counsel responded, stated that Defendant was working on the list, and stated that, if threatened with a motion to compel, Defendant would seek its own sanctions. (Pls.' Resp., Ex. D.) Plaintiffs' counsel stated that they would be willing to give more time to Defendant, provided that Defendant entered into a tolling agreement. (*Id.*) Defendant's counsel stated that Defendant would most likely be able to comply with the proposed deadline–the end of the week. (*Id.*)

Plaintiffs state that, when they received the updated list on September 23, 2013, they sent out a second Notice using the new contact information from the new list on September 25, 2013. (Pls.' Resp. at 9-10, Ex. F.) Plaintiffs represent that, prior to sending out the September 25, 2013 Notice, they inserted the requested "White Lake" information in the Consent form's third paragraph. (*Id.*)

Plaintiffs then represent that the September 23, 2013 list was under-inclusive. (Pls.' Resp. at 10.) Plaintiffs maintain that they received five Consent forms from technicians who were not listed on the updated list, but who had confirmed that they worked out of the White Lake warehouse: Leondres Davis, Donald G. Moore, Jason Pasant, Steven E. Williams, and Adam Rushford. (*Id.*, Ex. G, Dymon Lewis Aff. ¶ 19.)

Based on the foregoing, it appears to the Court that Plaintiffs did not mislead the potential plaintiffs with the Notices and Consents.

### 2. The envelope contained an error, but the content of the letter was clearly and simply conveyed

The other issue that Defendant has with Plaintiffs' mailings is that, on the envelopes, there is a stamp/printed mark with "NOTICE OF SETTLEMENT: AMCOMM" on the front

6

of the envelope. (Def.'s Mot., Ex. E.) The return envelopes, though, merely have "AMCOMM TELECOMMUNICATIONS" stamped on the front of the envelope. (*Id.*)

Defendant argues that Plaintiffs' counsel "deliberately misrepresented the status of this action by claiming it has been settled, which is obviously false." (Def.'s Mot. at 6.) Defendant maintains that it contacted Plaintiffs' counsel about the envelope issue and that Plaintiffs' counsel "blatantly denied its actions." (*Id.*) Defendant attaches email correspondence between the parties' counsel. (Def.'s Mot., Ex. F.) In the correspondence, Defendant's counsel asks Plaintiffs' counsel whether any of the Notices sent to the potential opt-in plaintiffs contained any reference to a settlement between the parties. (*Id.*) Plaintiffs' counsel denied the accusation and stated that the only thing that his firm had sent out was the Notice and Consent. (*Id.*)

Defendant has submitted thirty three affidavits in support of its argument that the envelopes were misleading. Defendant argues that the thirty three affidavits "present clear, convincing and unequivocal evidence that the communications" that Plaintiffs' counsel sent were "blatantly misleading." (Def.'s Mot. at 8.) Each of the identical affidavits contained the following language: "[b]ased upon [the envelope's "settlement sticker"] language, it was my understanding that there had been a settlement of a lawsuit involving Amcomm and there was money available to me as a result of that settlement." (Def.'s Mot.,Ex. G., Aff.)

Defendant further breaks down the affidavits. It states that fifteen are from current independent contractors who report to the White Lake facility; seven are from current independent contractors who report to various other AMcomm facilities and were not supposed to receive the notice; eleven are from former independent contractors who did

7

not report to the White Lake facility and also were not supposed to receive the notice. (Def.'s Mot. at 8.)

Defendant argues that Plaintiffs' counsel's actions relating to the envelopes have violated the Michigan Rules of Professional Conduct (MRPC).³ (Def.'s Mot. at 12.) Defendant maintains that Plaintiffs' counsel has violated MRPC 4.1 by "knowingly" making a false statement of material fact or law to a third person. (*Id.*) Defendant further maintains that Plaintiffs' counsel violated MRPC 7.1 by making a false, fraudulent, misleading, or deceptive communication. Finally, Defendant argues that Plaintiffs' counsel violated MRPC 7.1(b), which prohibits communications that are "likely to create an unjustified expectation about results the lawyer can achieve, or state or imply that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law[.]"

Defendant suggests that "Plaintiffs have violated court orders, misrepresented the nature of the conditionally certified class, sent notices to those who[m] the Court has specifically indicated are not part of the conditionally certified class, indicated to potential [p]laintiffs that this matter has already settled, and denied having done so on multiple occasions." (Def.'s Mot. at 13.)

Plaintiffs' counsel argues that "Defendant has mischaracterized Plaintiffs' conduct in a disingenuous effort to limit its liability to class members who have chosen to join in this action." (Pls.' Resp. at 4.) Plaintiffs further argue that, throughout the litigation, Defendant

---

³Available at: http://courts.mi.gov/courts/michigansupremecourt/currentcourtrules/5michiganrulesofprofessionalconduct.pdf

Rule 4.1 provides that "[i]n the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person."

has acted to delay notice to the putative class members "by refusing to produce contact information consistent with the Court's order in a timely manner, and providing incomplete contact information for putative class members." (*Id.*)

Plaintiffs explain that attorney Elizabeth Tully and administrative assistant Dymon Lewis worked on the September 12 and 25, 2013 Notice and Consent mailings. (Pls.' Resp. at 10.) Plaintiffs state that Tully worked on editing the notice and provided the relevant contact information to Lewis. (*Id.*) Unbeknownst to any of Plaintiffs' counsel, Lewis mailed the Notices and Consents in envelopes on which she attached a sticker stating "AMCOMM: NOTICE OF SETTLEMENT." (*Id.*) Plaintiffs represent that this error was a clerical one. (*Id.*) Plaintiffs explain that Lewis was fairly new to preparing mailings and "believed that the sticker was necessary simply because the other mailings she had sent out had all been notices related to a proposed settlement." (*Id.* at 10-11.) Plaintiffs maintain that no attorney directed Lewis to do so and that they have appropriately reprimanded Lewis. (*Id.* at 11.) While Plaintiffs' counsel takes full responsibility for the mailings, they urge the Court to find the error was unintentional and "not designed to mislead putative class members." (*Id.*)

Defendant points to *Longcrier v. HL-A Co., Inc.*, 595 F.Supp.2d 1218 (S.D.Ala. 2008) and *Belt v. Emcare Inc.*, 299 F.Supp.2d 664 (E.D.Tex. 2003) as support for the argument that courts have the ability to reprimand and prohibit further communication between a party and potential opt-in plaintiffs when an offending party has made misleading and coercive communications with the potential plaintiffs. (Def.'s Mot. at 11.)

Despite these offerings, the cases are not analogous to this case. The facts in both *Longcrier and Belt* are more egregious than in this case. The cases have little persuasive value.

In *Longcrier*, the court struck declarations from potential opt-in plaintiffs that the defendant company had procured during the pre-certification phase that directly related to the claims the named plaintiffs were making against the defendant. There, the defendant 'surveyed' the potential plaintiffs and coerced them into signing declarations stating that they had been fully paid for the time that they had worked for the defendant. The potential plaintiffs had no idea a lawsuit was pending and that executing the declaration could waive or compromise their rights in the suit. *Longcrier*, 595 F.Supp.2d 1218, 1227-28 (S.D.Ala. 2008). The court stated that "[s]uch unabashedly deceptive activity is exactly the type of misleading communication that has prompted federal courts to step in and regulate communications with potential class members prior to the certification of a § 216(b) class." *Id.* at 1228 (citations omitted). The court noted that the defendant's actions documented in the court file established a clear record of abusive communication to potential opt-in plaintiffs. *Id.* at 1229. The court ultimately struck the improperly procured declarations. *Id.* The court discussed how it found striking the declarations a proper sanction because it found bad faith in the defendants' actions. *Id.* at 1230.

Plaintiffs' counsel's mistakes in this case do not rise to the level of the defendants' actions in *Longcrier*. Here, there is no indication of bad faith. As the Court has already stated, the Consent is not misleading. While the stamp on the envelope could be read as misleading and give the reader the impression that the parties had already settled the case, the Court finds that, as soon as the individual receiving the  the envelope read the Notice

and Consent, that individual would know that the case had not settled. As Plaintiffs point out, the Notice explicitly states that "[t]here is no money currently available from this lawsuit to plaintiffs (or the persons receiving this notice) and there is no guarantee that the plaintiffs (or the persons receiving this notice) will recover any money by joining this lawsuit." (Pls.' Resp., Ex. B.)

In *Belt*, the defendant, after negotiating with the plaintiff about the notice to send to the potential opt-in plaintiffs, unilaterally sent a letter to the potential plaintiffs, immediately before the parties were to send the court-approved letter. 299 F.Supp.2d at 666. The court noted that the defendant's letter misrepresented "many of the issues in this action in such a way as to discourage absent class members from joining the suit." *Id*. The court noted that the defendant's letter "suggested that the current action was an attack on the potential plaintiffs' status as professionals." *Id*. The court also noted that the defendants misrepresented the amount of damages available to the potential plaintiffs. *Id*. at 666-67. The court reviewed further faults with the notice. *Id*. at 667.

The court held that the letter was misleading and coercive and was intended to undermine the collective action by discouraging the potential plaintiffs from joining the lawsuit. *Belt*, 299 F.Supp.2d at 668-69. Given the letter's purpose, the court reasoned that an appropriate sanction would be to enjoin the defendants from making any ex-parte communication. *Id*. at 669. As a sanction, the court required the defendant to issue a corrective notice and attach the court's opinion on the defendant's letterhead, pay for all costs and attorneys' fees in bringing the motion, and permitted more time for the potential plaintiffs to opt in. *Id*. at 669-70.

Again, the Court finds that *Belt* is not analogous to this case. Here, there is no showing of bad faith. The Court recognizes that Defendant has submitted thirty three affidavits of individuals who thought that they were going to receive some sort of settlement upon viewing the envelope. But the Court finds that, once the individual had opened the letter, there could have been no reasonable expectation of a settlement. The sticker most likely merely made a few more people open the letter.

The Court also finds evidence in Plaintiffs' counsel's emails. (Pls.' Resp., Ex. I.) In this correspondence, Plaintiffs' counsel shows skepticism about what Defendant's counsel was referencing when he said that the Notice and Consent mailings stated that the case had settled. (*Id.*) This correspondence is evidence that Plaintiffs' counsel did not know of the stickers on the envelopes and that they did not act in bad faith.

The Court recognizes that Plaintiffs' counsel's actions in this case have been less than ideal. The Court notes that Plaintiffs' counsel sent Notice and Consent mailings to individuals who did not work out of the White Lake warehouse, against the Court's orders. But the Court also recognizes that Plaintiffs' counsel did so because it did not receive a prompt list from Defendant and they it felt that they needed to protect the potential opt-in plaintiffs' rights. The Court reprimands both parties, but sanctions neither.

The Court finds no bad faith on Plaintiffs' part and no misleading communication that prejudices or would prejudice the outcome of this litigation. The Court therefore denies Defendant's motion to strike.

**B. The Court denies Plaintiffs' motion for leave to file opt-in forms of those individuals who did not physically work out of the White Lake, Michigan warehouse**

Plaintiffs have filed a motion for leave to file the opt-in consent forms of Todd Lepper, Gary Salesman, Matt Forrest, and John Toth. (Dkt. 91.) Plaintiffs state that these four individuals did not physically work out of the White Lake warehouse, but that they received their orders from the White Lake warehouse. (Pls.' Mot. at 3.) Plaintiffs explain that Lepper and Saleman physically reported to Defendant's Coldwater, Michigan location and that Forrest and Toth physically reported to Defendant Mount Morris, Michigan satellite location. (*Id.* at 3.) Despite the fact that the four individuals did not work out of the White Lake warehouse, Plaintiffs represent that all four individuals "confirmed that they received assignments from White Lake at the start of each shift; were required to check in with White Lake dispatchers throughout their shift; and were required to get permission to leave from White Lake at the end of each shift." (*Id.*)

Plaintiffs maintain that these four individuals "arguably work out of" the White Lake warehouse. (Pls.' Mot. at 3.) The four individuals sent opt-in Consent forms to Plaintiffs' counsel. (*Id.*)

Plaintiffs represent that their counsel has filed another suit in federal court on Lepper and Salesman's behalf so as to protect their rights if the Court does not grant the motion for leave to file.

The Court denies Plaintiffs' request. The Court granted the second motion for conditional certification as to the White Lake warehouse alone. The Court did so because it found that Plaintiffs had not met their burden of proof to show that they were entitled to a conditional class based out of anywhere else. The Court found that Plaintiffs' allegations relating to Defendant's other locations were conclusory.

13

The Court notes that the only reason that these four individuals received the Notice and Consent forms and returned the forms was because Plaintiffs' counsel sent the mailings based off of the initial list and not the White Lake-tailored list. While the Court does not find bad faith in that mailing and recognizes Plaintiffs' desire to secure their filing dates, the Court will not reward the behavior that would allow for a run-around the Court's conditional certification order.

### III. Conclusion

For the above-stated reasons, the Court DENIES Defendant's motion to strike and DENIES Plaintiffs' motion for leave.

    So ordered.        s/Nancy G. Edmunds
                                Nancy G. Edmunds
                                United States District Judge

Dated: February 5, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 5, 2014, by electronic and/or ordinary mail.

                                s/Johnetta M. Curry-Williams
                                Case Manager
                                Acting in the Absence of Carol A. Hemeyer